(38 South. 153.)

No. 15,382.

KNOTTS v. MIDKIFF et al.

(Feb. 27, 1905.)

REAL ESTATE—BROKERS—COMMISSIONS—EVIDENCE.

1. A mandate or procuration to sell land is gratuitous unless there has been a contrary agreement. Civ. Code, art. 2991. Where real estate was placed in the hands of regular brokers for sale on commission, and they purchased the property from an agent of the owner, with power of attorney to sell, such agent has no legal right to retain commissions out of the price received by him, in the absence of a specific agreement to that effect.

2. The burden of proof is on such an agent to show that he had the legal right to retain his principal's money as commissions, and, where the testimony is conflicting. the judgment appealed from, not clearly or manifestly erroneous, will not be disturbed.

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Action by John F. Knotts against H. K. Midkiff and others. Judgment for plaintiff, and defendants appeal. Affirmed.

McCoy & Moss, for appellants. Leon Sugar and W. J. Dickinson, for appellee.

LAND, J. This suit was instituted against Harry K. Midkiff, Edward F. Rowson, and Jacob P. Haber to recover a large amount of damages alleged to have accrued from a fraudulent sale by Midkiff, as agent of plaintiff, to his codefendants, also agents of plaintiff, of a tract of land, containing 593.25 acres, situated in the parish of Acadia, for the price of $20 per acre, when said land was well worth $75 per acre. Plaintiff sued also to recover $593.25 commissions, alleged to have been wrongfully retained by defendants.

The answer of Rowson and Haber was, in substance, that they purchased in good faith from Midkiff, who was authorized to sell the property by written mandate, and was specially authorized to sell at the price of $20 per acre, which was the market value of the tract of land at the time.

Midkiff answered that he, as agent, sold said property to his codefendants, and that plaintiff, with a full knowledge of the transaction, paid him $593.25 as commissions. Respondent further answered that the price obtained represented the actual value of the land at the time.

There was judgment in favor of Rowson and Haber, and against Midkiff, for $593.25, amount of commissions retained by him. Midkiff alone appealed, and plaintiffs have not prayed for an amendment of the judgment.

The only question, therefore, before the court is as to the correctness of the judgment against the appellant. We are not favored with the reasons of the trial judge, but assume from the briefs of counsel that he found on the facts that plaintiff had never agreed to pay Midkiff a commission, and that none was due him under the facts and circumstances of the case.

In August, 1901, plaintiff and Midkiff resided in Illinois, and the latter, with one J. W. Saunders, was engaged in the real estate immigration business, under the firm name of Midkiff & Co. Midkiff & Co. had an agreement with Rowson & Co., real estate agents and speculators at Jennings, La., to divide commissions on all sales made to investors and excursionists introduced by Midkiff & Co. Plaintiff was one of a party of excursionists brought by Midkiff to Jennings in August, 1901, and on the 24th of the same month plaintiff contracted to purchase, through Rowson & Co., a tract of land containing 593.25 acres, at $15 per acre. This deal was consummated, and plaintiff acquired a title from the owner, who had given an option to certain brokers, who, in turn, had transferred the same to Rowson & Co. Plaintiff listed the land in the latter agency at $25 per acre, and before he left for home refused an offer of $20 per acre, made in the interest of Rowson & Co., and took the land off the market.

It appears that plaintiff had given Midkiff a general power of attorney to buy and sell real estate.

On September 11, 1901, Midkiff called to see plaintiff in Decatur, Ill., and advised him to sell the land for $20 per acre. As is usual in such cases, the parties contradict each other as to what passed between them. Plaintiff admits that he finally authorized the sale at that price, if no better could be had, but testified that the understanding was that the property should be offered for $21 per acre, and the extra dollar should go to Midkiff as a commission.

It is certain that on the same day Midkiff wired Rowson & Co. as follows:

"Can you sell Knotts' farm twenty one dollars per acre with crop. Answer."

The reply was that the "party" was out of town. Rowson & Co. subsequently wired Midkiff & Co. This message was not produced, but Saunders, a clerk of said firm, deposed as follows:

"We received a telegram from E. F. Rowson & Co. making an offer of $20 an acre, net, and Midkiff told Knotts the same."

This same witness further deposed as follows:

"It was agreed between Midkiff and Knotts that, if the land sold for $21 per acre, there would be $1 per acre commission on the sale of land. Nothing was said as to who was buying the land."

On September 19, 1901, Midkiff wrote plaintiff as follows:

"Rowson & Company inform [me] that they sold your land at $20.00 per acre, as directed by your telegram."

On September 23, 1901, Midkiff wrote plaintiff:

"I have $5337.00 for you. * * * They sold the land for $20 per acre and kept out their commission 5% as you had listed before you left here and as you told me when I sent the telegram."

The facts are that Midkiff himself, as agent, made the sale to Rowson & Co., as evidenced by deed dated September 29, 1901, and that Rowson & Co. on the same day conveyed one undivided third interest in the tract to Midkiff. Hence neither Midkiff nor Rowson & Co. put the land on the market, but took the title in themselves. Rowson & Co. could charge no commission, and the whole price was paid to Midkiff, as agent for plaintiff, who, doubtless feeling that he could not properly charge a commission under the circumstances, deliberately concealed the true facts from the principal, and stated to him in black and white that Rowson & Co. had sold the property (presumably to a third person), and had retained 5 per cent. commission for their services.

Whether plaintiff had agreed to pay a commission to Rowson & Co. is not material, as he acquiesced in the retention of the commission by them for their supposed services. He, however, being ignorant of the facts, did not estop himself by so doing as to his agent, Midkiff.

It is true that several months afterwards plaintiff discovered from the records how the transfers had been made, and did not demand the return of the commissions until the institution of this suit, in February, 1904. This delay, however, did not affect his legal right to demand an accounting from his agent.

It is not shown that plaintiff knew that Midkiff himself had retained the commission, and that none was charged or claimed by Rowson & Co.

The property was placed in the hands of Rowson & Co. for sale on a commission. They could not sell to themselves, and, when they desired to become purchasers, it was their duty to have so informed their principal. The making of the purchase from the agent instead of from the principal did not change the situation. In executing the deed of sale, the agent acted in the name of his principal, and the legal effect was the same as if the principal had been present acting for himself. Then how did Midkiff become entitled to commissions? It can hardly be said that he found the purchasers in Rowson & Co., the brokers who had the property for sale, and who all along desired to acquire it. There is no equity in defendant's favor from the point of view of a broker who by his exertions has made a sale in the interest of his principal. The district judge held that the evidence did not show any employment as broker, nor any agreement for compensation, and we are not prepared to dissent from these conclusions. The agreement of September 11, 1901, that Midkiff should have a commission of $1 per acre if he sold the land for $21 per acre, is proven by two witnesses, corroborated by the telegram of that date. Plaintiff testified that he had no other understanding or agreement with defendant on

the subject. It is true that defendant testifies to the contrary, but the trial judge gave credence to the testimony of plaintiff. We cannot be expected to reverse his conclusions on the subject, especially as the burden of proof was on defendant to show his right to retain the money. Unless we assume that plaintiff placed this land in the hands of defendant, as a broker, for sale on commissions, and that he, as broker, procured the sale to Rowson & Co., the judgment below cannot be reversed. A procuration is presumed to be gratuitous. Civ. Code, art. 2991.

Defendant, personally, was agent of plaintiff, and in that capacity received the money. His firm is not liable, and therefore defendant was not jointly bound for the restitution of the money, as contended in the alternative by his counsel.

Judgment affirmed.